MANATT, PHELPS & PHILLIPS, LLP
MARGARET LEVY (Bar No. 66585)
BECKY J. BELKE (Bar No. 179675)
mlevy@manatt.com
bbelke@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

*Attorneys for Defendant*
USAA LIFE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MARSHALL SALKIN, an individual; ELLEN SALKIN, an individual,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION; USAA LIFE INSURANCE COMPANY; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | CASE NO.  EDCV 10-01322 VAP (OPx)<br><br> HON. VIRGINIA A. PHILLIPS<br><br>USAA LIFE INSURANCE COMPANY'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF USAA LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT<br><br>Filed concurrently with:<br><br>1.  USAA Life Insurance Company's Motion for Summary Judgment;<br><br>2.  Declaration of Tammy Koenig<br><br>3.  Declaration of Tara Williams<br><br>4.  Declaration of Denetrice Holmes<br><br>5.  Declaration of Becky J. Belke<br><br>6.  [Proposed ] Order Granting Motion For Summary Judgment<br><br>DATE:　　　　December 5, 2011<br>TIME:　　　　2:00 p.m.<br>COURTROOM:  2<br><br>Complaint Filed: July 23, 2010 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

Defendant USAA Life Insurance Company ("USAA Life") respectfully submits this Separate Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment on the Complaint filed by Plaintiffs Marshall Salkin and Ellen Salkin ("Plaintiffs") pursuant to Central District Local Rule 56-1.

## UNCONTROVERTED FACTS

| Uncontroverted Fact | Supporting Evidence |
| --- | --- |
| 1. Dr. Salkin initially applied for life insurance with USAA Life in September 2007. | Declaration of Tammy Koenig ("Koenig Decl.") ¶ 2. |
| 2. Dr. Salkin completed a telephonic application which was tape-recorded, wherein he reported that his father died at the age of 50 from heart disease, and denied any other medical problems or treatment. | Koenig Decl., ¶ 2; Declaration of Denetrice Holmes ("Holmes Decl.") ¶ 3, Ex. A; Declaration of Becky J. Belke ("Belke Decl.") ¶ 2, Ex. A at p. 5-8. |
| 3. Dr. Salkin was offered a policy at an increased rate (Table B) based on a reported family history of cardiovascular disease and the results of a routine EKG which showed a right bundle branch block. | Koenig Decl., ¶ 2. |
| 4. Dr. Salkin did not go forward with the purchase of life insurance | Koenig Decl., ¶ 3. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| coverage at that time. | |
| 5.   In May, 2008, Dr. Salkin renewed his interest in life insurance coverage with USAA Life, but because nearly 8 months had passed since his last application, he was required to reapply and undergo a new physical exam and lab tests. | Koenig Decl., ¶ 4. |
| 6.   Dr. Salkin completed another telephonic application for coverage with USAA Life Insurance on May 9, 2008, which was again tape-recorded. | Koenig Decl., ¶ 5; Williams Decl., ¶ 2-3, Ex. A. |
| 7.   During the telephonic interview, Dr. Salkin reported the following: a family history of heart disease, an EKG that was performed in connection with his 2007 USAA life insurance application which showed the right bundle branch block, a life insurance contract that was rated due to the right bundle branch block (referring to USAA Life's September 2007 offer of coverage at a Table B rating), history of high blood pressure for which he was taking Diovan, and six month driver's license | Koenig Decl., ¶ 5, Williams Decl., ¶ 3, Ex. A; Belke Decl., ¶ 3, Ex. B at p. 14-19. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

USAA LIFE INSURANCE COMPANY'S
SEPARATE STATEMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| suspension due to a foot injury which was subsequently reinstated. | |
| 8. Dr. Salkin denied any medical treatment whatsoever and stated that he had not consulted any doctors, and that he treated himself and prescribed Diovan for high blood pressure. He repeatedly denied keeping any medical records with regard to his self-treatment, and in fact denied the existence of any medical records whatsoever. | Koenig Decl., ¶ 5, Williams Decl., ¶ 3, Ex. A; Belke Decl., ¶ 3, Ex. B at p. 14-19. |
| 9. If Dr. Salkin had disclosed the names of any medical providers or medical treatment that he had sought or received, USAA Life would have obtained the corresponding medical records and then evaluated any risks presented. | Koenig Decl., ¶ 6. |
| 10. Specifically, Dr. Salkin was asked, in pertinent part, the following questions by Tara Williams during the telephone interview, and provided the following responses:<br>**Tara:** And have you ever consulted with a health care provider for a seizure, paralysis, stroke, | Williams Decl., ¶ 3, Ex. A; Belke Decl., ¶ 3, Ex. B at p. 14-19. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| depression, anxiety or other mental or nervous system disorder? **Dr. Salkin's Response**: No.  **Tara:** Are you currently taking prescription medication not previously disclosed? **Dr. Salkin's Response:** Yes [Dr. Salkin explains that he prescribed himself Diovan that he takes once per day and kept no records]. **Tara:** Are you currently taking any other medical – I mean any other prescription medication? **Dr. Salkin's Response:** No.  **Tara**: Within the past five years, have you had an electrocardiogram, x-ray or any other diagnostic tests or procedure that was – **Dr. Salkin's Response**: Yeah, I did an EKG to my insurance physical....[Dr. Salkin goes on to explain the right bundle branch block discovered during the paramedical exam by | |

5

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| USAA Life in September 2007 in connection with his first USAA Life application.] **Tara:** And have you been advised to have any diagnostic tests, hospitalization or surgery which was not completed? **Dr. Salkin's Response:** No. **Tara**: And have you consulted a health care provider for any reason not previously disclosed? **Dr. Salkin's Response:** No. **Tara:** And some of your answers indicate that USAA Life Insurance Company will need to obtain a copy of your medical records to better evaluate your application, and I will now -- **Dr. Salkin's Response:** I don't have any medical records. **Tara:** Okay, I still have to read this question, this paraphrase. Some of your answers indicate that USAA Life | |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| Insurance Company will need to obtain a copy of your medical records to better evaluate your application.  I will now read to you the authorization for release of your medical records and record your verbal permission.  You may revoke this authorization at any time by sending us a written request, and this authorization expires automatically in 24 months upon request.  You may receive a copy of the authorization.  Do you authorize any licensed physician, medical practitioner, hospital, clinic or other health related facility to release the entire content of their medical records on you or any child to be insured to USAA Life Insurance Company or its assigned.<br>**Dr. Salkin's Response:**<br>All right. | |
| 11.    Dr. Salkin also underwent a paramedical exam, lab tests and a resting EKG in connection with his May 2008 application for life insurance with USAA Life. | Koenig Decl., ¶ 7, Ex. A at p. 12-18. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

USAA LIFE INSURANCE COMPANY'S SEPARATE STATEMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 12. Based on the information provided by Dr. Salkin in the telephonic application, the results of the paramedical exam, lab tests and resting EKG, and the results of a Medical Information Bureau ("MIB") Report, USAA Life's underwriting department approved coverage for a 10 year level term life insurance policy at a Table B rating, with a face amount of $500,000. | Koenig Decl., ¶ 8. |
| 13. USAA Life issued Policy No. A751738454 (the "Policy") to Dr. Salkin with an effective date of May 28, 2008. | Koenig Decl., ¶ 9, Ex. B at pp. 87-121. |
| 14. A summary of the telephonic application was attached to and made a part of the Policy. | Koenig Decl., ¶ 9, Ex. B at p. 117-121. |
| 15. The Policy contained the following Incontestability provision:<br><br>**Incontestability:** We will not contest this policy based on statements made in an application after this policy has been in effect during the insured's lifetime for 2 years from the Effective Date. We can contest its validity at any time for fraud or for failure to pay premiums. While this policy is contestable, the Company may rescind the policy or | Koenig Decl., ¶ 9, Ex. B at p. 101. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| deny a claim on the basis of a material misstatement in the application. | |
| 16.  In December 2009, Dr. Salkin submitted a claim to USAA Life for an Accelerated Death Benefit in the amount of $250,000 based on a November 2009 diagnosis of prostate cancer. | Koenig Decl., ¶ 11, Ex. C at p. 122-128. |
| 17.  The Accelerated Benefit for Terminal Illness rider is a benefit option that was available to Dr. Salkin.  The Accelerated Benefit for Terminal Illness Rider provides:<br><br>**ACCELERATED BENEFIT FOR TERMINAL ILLNESS RIDER**<br><br>**Accelerated Benefit:** You may request that the Company make an accelerated benefit payment if the Insured has a Terminal Illness prior to the Maturity Date of the policy, subject to the conditions stated in this rider.  You are responsible for any and all tax consequences which may result from the payment of the Accelerated Benefit. The maximum Accelerated Benefit that will be paid is the lesser of:<br>1.  One half of the current Death Benefit of the policy, excluding any additional benefits provided by the rider; or<br>2.  $250,000 | Koenig Decl., ¶ 12. |
| 18.  In connection with Dr. Salkin's claim for the $250,000 Accelerated Death Benefit, Mrs. Salkin faxed the names of several medical providers who | Koenig Decl., ¶ 13; Ex. D at p. 129. |

USAA LIFE INSURANCE COMPANY'S
SEPARATE STATEMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| had recently treated Dr. Salkin in connection with his prostate cancer diagnosis (i.e., Dr. Lance Walsh (Urologist), Dr. Andovolu (Oncologist), and Eisenhower Medical Center), and the name of his medical insurer (i.e., TriWest Medical Alliance/MOAA Mediplus Tricare Supplement). | |
| 19. Since the claim was submitted within the 2 year contestability period, USAA Life advised Dr. Salkin that a routine contestable investigation would be conducted regarding his health history. | Koenig Decl., ¶ 14. |
| 20. USAA Life requested and obtained the medical records of Drs. Walsh, Andovolu and Eisenhower Medical Center, and also requested and received records from TriWest Medical Alliance. | Koenig Decl., ¶ 15. |
| 21. A claim summary was provided by TriWest Medical Alliance which revealed multiple doctor visits occurring prior to the effective date of Dr. Salkin's Policy, including visits to Drs. Andrew | Koenig Decl., ¶ 16; Ex. E at p. 130-131. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

USAA LIFE INSURANCE COMPANY'S SEPARATE STATEMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| Janik, Hamid Salari-Namin, and Ryzard Skulski, among others. | |
| 22.  USAA Life requested and obtained the medical records of these physicians. | Koenig Decl., ¶ 17, Ex. F, p. 136-178. |
| 23.  The medical records received by USAA Life from Dr. Janik indicated that Dr. Salkin was diagnosed with manic depressive disorder (recurrent and severe) and obsessive compulsive neurosis, and had been followed by a psychiatrist, Dr. Andrew Janik, since December 2003. | Koenig Decl., ¶ 17, Ex. F at pp. 150, 154, 176. |
| 24.  The records received by USAA Life from Dr. Janik also indicated that at the time Dr. Salkin he was seeing Dr. Janik he had thoughts of suicide, and was treated with prescription medications, including Prolixin and Zoloft, until those medications were changed in December 2007 to Seroquil, Ativan and Lexapro, when he was in crisis over family issues and his financial situation. | Koenig Decl., ¶ 17, Ex. F at p. 137-140, 149. |
| 25.  The medical records received by | Koenig Decl., ¶ 17, Ex. F at pp. 154- |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| USAA Life from Dr. Hamid Salari-Namin indicated that Dr. Salkin consulted Dr. Hamid Salari-Namin, a neurologist, on November 26, 2007, and had an abnormal non-contrast MRI on November 30, 2007 indicating an accelerated number of small chronic lacunar infarcts (strokes caused by blocked arteries); | 155; 176-178. |
| 26.   The medical records received by USAA Life from Dr. Ryzard Skulski indicated that Dr. Salkin consulted Dr. Ryzard Skulski, a cardiologist, who ordered a stress test performed on October 25, 2006, that was electrocardiographically positive for myocardial ischemia (lack of blood to the heart). | Koenig Decl., ¶ 17, Ex. F at pp. 154-155. |
| 27.   The medical records received by USAA Life from Dr. Skulski also indicated that Dr. Salkin had an abnormal EKG with T-Wave inversions on September 16, 2006, ordered by Dr. Skulski, which was suggestive of hypertrophic cardiomyopathy | Koenig Decl., ¶ 17, Ex. F at pp. 154-155, 173. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| (thickening of the heart muscle), sleep apnea with morbid obesity and diminished functional capacity. | |
| 28. The medical records received by USAA Life from Dr. Skulski also indicated that Dr. Salkin had an echocardiogram (sonogram of the heart) ordered by Dr. Skulski on September 18, 2006, which showed inferior and posterior wall hypokinesis (slowing of contraction) with LFVEF 55% (percentage of blood pumped from the left ventricle) and mild concentric LVH (wall thickens around the left ventricle). | Koenig Decl., ¶ 17, Ex. F at 154-155, 171-172. |
| 29. The medical records received by USAA Life from Dr. Skulski also indicated that Dr. Salkin was treated for high cholesterol by Dr. Skulski in late October/early November, 2006 and was taking Lipitor. | Koenig Decl., ¶ 17, Ex. F at p. 154. |
| 30. The medical records received by USAA Life also indicated that Dr. Salkin was advised by Dr. Skulski to have a coronary angiography (procedure to visualize blood in the coronary | Koenig Decl., ¶ 17, Ex. F at pp. 156-157. |

13

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| arteries via catheter) on November 20, 2006. | |
| 31. Dr. Salkin failed to advise USAA Life of any of this material medical information at the time of his application, despite being asked. | Williams Decl., ¶ 3, Ex. A; Belke Decl., ¶ 3, Ex. B at pp. 14-19; Koenig Decl., ¶ 5. |
| 32. The misrepresentations and omissions outlined above were of such a magnitude that had USAA Life known of them, it would not have issued the Policy. | Koenig Decl., ¶ 18. |
| 33. On May 21, 2010, USAA Life sent a letter to Dr. Salkin rescinding his policy due to the material medical history that he failed to disclose, and enclosed a refund check for all premiums paid by Dr. Salkin. | Koenig Decl., ¶ 19, Ex. G, p. 179-181. |

## CONCLUSIONS OF LAW

1. As a matter of law USAA Life is entitled to judgment on Plaintiffs' claim for breach of contract, as the life insurance policy issued to Dr. Salkin was void in ab initio and properly rescinded based upon his material misrepresentations.

2. As a matter of law USAA Life is entitled to judgment on Plaintiffs' claim for breach of the covenant of good faith and fair dealing as USAA

Life did not breach the contract as it was void ab initio and properly rescinded based upon his material misrepresentations.

3. As a matter of law USAA Life is entitled to judgment on Plaintiffs' claim for breach of the covenant of good faith and fair dealing as a genuine dispute existed regarding the existence of the contract.

4. As a matter of law USAA Life is entitled to judgment on Plaintiffs' claim to Set Aside Rescission under Civil code Section 1692 as the life insurance policy issued to Dr. Salkin was void in ab initio and properly rescinded based upon his material misrepresentations.

5. As a matter of law USAA Life is entitled to judgment on Plaintiffs' claim for punitive damages as there is no clear and convincing evidence that USAA Life acted with malice, oppression or fraud.

Dated: November 7, 2011

MANATT, PHELPS & PHILLIPS, LLP
MARGARET LEVY
BECKY J. BELKE

By: ___/ s /   Becky J. Belke___
Becky J. Belke
*Attorneys for Defendant*
USAA LIFE INSURANCE COMPANY

300915432.2